Steven J. German - State Bar No. 014789
Scott B. Seymann – State Bar No. 027215
**ADELMAN GERMAN, P.LC.**
8245 North 85th Way
Scottsdale, Arizona 85258
Telephone (480) 607-9166
Facsimile (480) 607-9031
steve@adelmangerman.com

*Additional Attorneys for Plaintiff
Appear on Signature Line*

[Additional counsel appearing on signature page]

*Attorneys for Plaintiff and the Putative Classes*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| **RICHARD WILBER**, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**PRECISION OPINION, INC.,** a Nevada corporation,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *et seq.***<br><br>**DEMAND FOR JURY TRIAL** |

{AG:00337393.DOCX}CLASS ACTION COMPLAINT          1                                    CASE NO.

Plaintiff Richard Wilber ("Wilber") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Precision Opinion, Inc. ("Precision Opinion") to stop Precision Opinion's practice of making unsolicited autodialed telephone calls to the cellular telephones of consumers nationwide and to obtain redress for all persons injured by its conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1. Defendant Precision Opinion is in the business of conducting telephone surveys by making autodialed telephone calls to thousands of consumers nationwide.

2. To collect survey data, Defendant repeatedly makes autodialed telephone calls to the cellular telephones of Plaintiff and the other members of the Classes without consent in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

3. By making the telephone calls at issue in this Complaint, Defendant caused Plaintiff and the members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the receipt of such calls, in addition to a loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such calls. Furthermore, the calls interfered with Plaintiff's and the other Class members' use and enjoyment of their cellphones, including the related data, software, and hardware components. Defendant also caused substantial injury to their phones by causing wear and tear on their property, consuming battery life, and appropriating cellular minutes.

4. The TCPA was enacted to protect consumers from unsolicited and annoying telephone calls like those alleged in this case. In response to

Defendant's unlawful conduct, Plaintiff files the instant lawsuit and seeks an injunction requiring Defendant to cease all unsolicited telephone calling activities to consumers as complained of herein and an award of statutory damages to the members of the Classes under the TCPA, together with costs and reasonable attorneys' fees.

**PARTIES**

5. Plaintiff Richard Wilber is a natural person and citizen of the State of Arizona.

6. Defendant Precision Opinion, Inc. is a company existing under the laws of the State of Nevada with headquarters located at 101 Convention Center Dr. Plaza 125, Las Vegas, Nevada 89109.

**JURISDICTION AND VENUE**

7. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, which is a federal statute.

8. The Court has personal jurisdiction over Precision Opinion because Defendant committed tortious acts in Arizona and Defendant calls consumers in this District.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant Precision Opinion does business in this District and the causes of action arose, in substantial part, in this District. Additionally, Plaintiff resides in this District.

**COMMON FACTUAL ALLEGATIONS**

10. Defendant does business as a telephone research service company that conducts market research for government agencies, Fortune 500 companies, and politicians using widespread telephone survey campaigns through an automatic telephone dialing system ("ATDS") on a broad range of topics from local issues, national questions, medical surveys, retail preferences, and more.

11. In placing the calls that form the basis of this Complaint, Defendant utilized an ATDS. Specifically, the hardware and software used by Defendant has the capacity to generate and store random numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendant's automated dialing equipment also is, or includes features substantially similar to, a predictive dialer, meaning that it is capable of making numerous phone calls simultaneously and automatically connecting answered calls to then available callers and disconnecting the rest (all without human intervention).

12. When placing these calls to consumers, Defendant fails to get the consent of cell phone owners/users to make such calls required by the TCPA.

13. Indeed, instead of getting the express consent required by the TCPA, Defendant used so-called "random digit dialing" as part of its surveys:

- "The Precision Opinion American Tracking Survey was conducted the last two weeks of November 2007 with 1002 adults 18 years of age and older. The methodology was random digit dial conducted from Precision Opinion's phone center in Las Vegas, NV."[1]

- "…said James T. Medick, CEO of Precision Opinion, whose opinion research firm conducted the random digit dial telephone survey."[2]

- "The new poll was conducted last month by Jim Medick of Precision Opinion, which conducts proprietary marketing research for political campaigns as well as for corporate clients, including casinos and retailers… Researchers used a random digit dialing method to call thousands of people to accumulate a sample of 599 Southern California gamblers who said they had driven to Las Vegas at some point in the past three years."[3]

- "The interviews were conducted in English by Precision Opinion from May 16 to May 25, 2014. The sample utilized a random digit dial (RDD) list."[4]

---

[1] http://www.businesswire.com/news/home/20071217005758/en/Precision-Opinion-Survey-Finds-Fear-Zones-Neighborhoods
[2] http://www.businesswire.com/news/home/20110309007081/en/Clark-County-Residents-Weigh-Important-Issues-Survey
[3] http://lasvegassun.com/news/2008/jul/08/survey-gas-prices-deter-southern-californians/
[4] http://www.aarp.org/content/dam/aarp/research/surveys_statistics/general/2014/Issues-and-Concerns-of-the-50-Plus-in-Maine-Congressional-District-2-2014-AARP-Survey-of-Maine-Registered-Voters-Age-50-and-Older-AARP-res-gen.pdf

14. While this "random dialing" method of collecting survey responses may be within the letter of the law for calls placed to landline ("wireline") telephones, the same calls to cellular ("wireless") telephones are specifically *not* permitted without some form or prior express consent. As explained by the Federal Communications Commission ("FCC") in its 2012 order:

> Additionally, we note that many commenters expressed concern about obtaining written consent for certain types of autodialed or prerecorded calls, including debt collection calls, airline notification calls, bank account fraud alerts, school and university notifications, research or survey calls, and wireless usage notifications. Again, such calls, to the extent that they do not contain telemarketing messages, would not require any consent when made to residential wireline consumers, but *require either written or oral consent if made to wireless consumers* and other specified recipients.[5]  [Emphasis added].

15. Defendant has no prior express consent (oral or written) to make these autodialed survey calls to cellular telephone numbers.

16. Consumer complaints about Defendant's invasive and repetitive calls are legion. Some examples from those consumer complaints include:

- Daily calls with no one on the other end.[6]
- Calls daily and when you answer no one is there.[7]
- I am also on the DNC call list and get at least one to two calls a day from this number. So annoying...just wish it would STOP!!;[8]
- Keeps calling and no message.... calls over and over. After all these complaints why doesn't someone do something.[9]
- This number calls daily…any hour...any time of day...up to twice in one day. Not only am I on the Do Not Call list but I have blocked this number which gives caller a message but it still rings once on my phone, how annoying. They should be FINED because they

---

[5] In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC 12-21, CG Dkt. 02-278.
[6] http://whocalledchecker.com/phone-number/7024304995
[7] *Id.*
[8] *Id.*
[9] *Id.*

{AG:00337393.DOCX}CLASS ACTION COMPLAINT     5     CASE NO.

do not honor the government system;[10]

- Received several calls, when I finslly [sic] answered it was a survey for elderly people, I said thank you and was about to hang up when I realized the same message had started over. I promptly hung up. This company has called at least 6 times this week;[11]
- caller never says anything, calls several times a day;[12]
- Calls once a day – robocall;[13]
- Calls and then answer they hang up;[14]
- Asked for them to quit calling. Ignored;[15]
- They refuse to remove from call list. Scam survey;[16]
- Called on cellphone, no message was left;[17]
- On 7/7/16 at 8:21 pm EST received call on cell phone and no message was left;[18] and
- Called multiple times today on my cell. They completely missed appropriate call times in my time zone.[19]

17. In light of these complaints, Defendant has knowledge that it has placed telephone calls to the cellular telephones of consumers without consent and in the face of dozens of consumer complaints.

18. In making the phone calls at issue in this Complaint, Defendant and/or their agents utilized an autodialing system to dial and transmit the calls to cellular telephones. Specifically, the hardware and software used by Precision Opinion has the present capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention.

---

[10] *Id.*
[11] *Id.*
[12] https://www.callercenter.com/702-815-2394.html/2
[13] https://www.everycaller.com/phone-number/1-702-815-2394/
[14] http://www.whitepages.com/phone/1-702-815-2394
[15] *Id.*
[16] *Id.*
[17] http://800notes.com/Phone.aspx/1-702-815-2394/13
[18] http://800notes.com/Phone.aspx/1-702-815-2394/14
[19] *Id.*

{AG:00337393.DOCX}CLASS ACTION COMPLAINT   6   CASE NO.

Defendant's automated dialing equipment includes features as a predictive dialer, inasmuch as it is capable of making numerous calls simultaneously (all without human intervention).

19. Precision Opinion repeatedly touts that it's systems and procedures are compliant with the TCPA:

- "Precision Opinion screens all phone numbers we dial through a government approved screening process that identifies Wireless Phone numbers and Land Line Phone Numbers."[20]

- "Precision Opinion does not dial with an Automatic Dialer any Phone Numbers identified through the screening process as being a Wireless phone number."[21]

- "With the FCC TCPA Ruling of 10 July 2015, a lot of market research companies are trying to figure out how to adapt. Here are [sic] Precision Opinion, not only have we adapted, but we have perfected our mode of market research so that we are 100% compliant with the new TCPA Ruling regarding cell phone dialing."[22]

- WE ARE 100% TCPA COMPLIANT.[23]

20. However, it is apparent that at least in numerous cases, Defendant calls cell phone users with an autodialer without prior express consent.

21. For example, people have complained recently, in addition to Plaintiff Wilber, about the following circumstances that reflect that they were called by Defendant on their cell phone using an autodialer without consent:

- "Calling on cellphone, no message was left."[24]

- "Called multiple times today on my cell. They completely missed appropriate call times in my time zone."

- After receiving 3 hang up calls this afternoon, I decided to *69 the number. I then called it back and the answering machine said that since they do not qualify as a telemarketer, they do not have to abide by the National Do Not Call Registry. This is just another reason why I do not have a landline at home.

---

[20] http://precisionopinion.com/tcpa-compliance/
[21] *Id.*
[22] http://precisionopinion.com/news/
[23] http://precisionopinion.com/we-are-100-tcpa-compliant/
[24] http://800notes.com/Phone.aspx/1-702-815-2394/13

22.     Certain third party services are available that will "scrub" the call lists for a telemarketer to segment out landline and cellular telephone numbers, since the consent standards differ depending on what type of phone a telemarketer is calling.[25]  Indeed, one service notes that they can:

> Instantly verify whether a specific phone number is wireless or wireline to learn if TCPA regulations apply – and verify the identity of the current subscriber to determine if they are the same party who provided you with consent.[26]

23.     On information and belief, Defendant fails to utilize any such service.

24.     Furthermore, neither plaintiff nor the members of the putative class have given Defendant prior express consent to call them on their cellular phones using an autodialer.

25.     In addition, Defendant makes autodialed calls to the cell phones of consumers after they are requesting for the phone calls to stop. Even if Plaintiff or the members of the putative class had consented originally (which they did not), any consent would have been revoked once the consumer informed Defendant to stop calling.

## FACTS SPECIFIC TO PLAINTIFF RICHARD WILBER

26.     During the week of July 11, 2016, Plaintiff began to receive repeated telephone calls on his cellular telephone from Precision Opinion purportedly to conduct a medical survey. The calls all came from the same phone number 702-815-2394 – a number belonging to or controlled by Defendant.

27.     Plaintiff heard a noticeable delay when he would pick up the calls and would say hello several times before being connected to an operator. Such a delay is suggestive of an ATDS.

28.     Plaintiff received numerous telephone calls to his cellular telephone from Defendant daily for a period of 3 days. The last autodialed telephone call

---

[25] See e.g. http://www.dncsolution.com/do-not-call.asp; http://www.donotcallprotection.com/do-not-call-compliance-solutions-1; http://www.mindwav.com/tcpa_compliance_solution.asp;
[26] https://www.neustar.biz/services/tcpa-compliance

from Defendant was received on Sunday, July 17, 2016 at approximately 4:30 PM.

29. Early on when the autodialed telephone calls to Plaintiff's cellular telephone first began, Plaintiff asked for the calls to stop. Despite his repeated requests, the calls continued.

30. Part of Plaintiff's job as a contractor requires him to spend time driving from job site to job site. The calls from Precision Opinion were a constant distraction and a danger for Plaintiff as they were placed to him while he was driving his car. Plaintiff generally needs to answer his phone as he receives regular calls from prospective and existing clients.

31. Plaintiff never consented either orally or in writing to receive autodialed telephone calls on his cellular telephone from Precision Opinion.

32. Plaintiff does not have a relationship with Precision Opinion, has never provided his telephone number directly to Defendant, and has never requested that Precision Opinion place calls to him or offer its services. Simply put, Plaintiff has never provided any form of prior express consent to Defendant to place calls to him and has no business relationship with Defendant.

33. Defendant at all times are and were aware that the above-described telephone calls were and are being made to consumers like Plaintiff who had not consented to receive them.

34. By making unauthorized auto-dialed calls on a cell phone as alleged herein, Precision Opinion has caused consumers actual harm. In the present case, a consumer could be subjected to many unsolicited autodialed telephone calls as Precision Opinion's opt-out mechanism does not work.

35. In order to redress these injuries, Plaintiff, on behalf of himself and the Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited autodialed telephone calls to cellular telephones.

36. On behalf of the Classes, Plaintiff seeks an injunction requiring Precision Opinion to cease all unauthorized autodialed telephone calling activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ALLEGATIONS

37. **Class Allegations**: Plaintiff Wilber brings this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of himself and two classes defined as follows:

> **Autodialed No Consent Class**: All persons in the United States who (1) Precision Opinion called during the last four years, (2) on the person's cellular telephone number, (3) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it obtained prior express consent to call the Plaintiff.
>
> **Requested Stop Class**: All persons in the United States who (1) Precision Opinion called during the last four years, (2) on the person's cellular telephone, (3) after the person informed Precision Opinion that s/he no longer wished to receive calls from Precision Opinion.

The following people are excluded from the Classes: any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons. Plaintiff anticipates the potential need to amend the Class Definitions following the completion of class discovery regarding the size and scope of the Classes.

38. **Numerosity**: The exact size of the Classes is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant Precision Opinion made telephone calls to thousands of consumers who fall into the definition of the Classes. Members of the Classes can be easily identified through Precision Opinion's records.

39. **Commonality**: There are several questions of law and fact common to the claims of Plaintiff and the Classes on which every class member's claim will either succeed or fail, and which will be proven using common evidence. Such common questions for the Classes include, without limitation:

(a) Whether Defendant's conduct violated the TCPA;

(b) Whether Defendant systematically made telephone calls to individuals who did not previously provide Defendant and/or its agents with their prior express consent to receive such phone calls;

(c) Whether Defendant made the calls with the use of an ATDS;

(e) Whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct; and

(f) Whether Defendant systematically made telephone calls to consumers after they explicitly asked not to be called from Defendant

40. **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Classes. Plaintiff is a member of the Classes, and if it violated the TCPA to call Plaintiff then it violated the TCPA to call the other class members. Plaintiff and the Classes sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Classes.

41. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel

{AG:00337393.DOCX}CLASS ACTION COMPLAINT     11     CASE NO.

competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Classes or actual conflicts with the class members, and Defendant has no defenses unique to Plaintiff.

42. **Policies Generally Applicable to the Classes**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes as respective wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Classes as respective wholes. Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as respective wholes, not on facts or law applicable only to Plaintiff.

43. **Predominance:** The common questions of law and fact set forth above predominate over any individual issues. Whether Defendant properly obtained prior express consent to call goes to the very heart of the case and is a fact on which all class members' claims hinge. As such, the common issues predominate over any supposed individualized issues.

44. **Superiority and Manageability**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would

increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227 *et seq.***
**(On behalf of Plaintiff and the Autodialed No Consent Class)**

45. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

46. Defendant made unsolicited and unwanted autodialed telephone calls to telephone numbers belonging to Plaintiff and the other members of the Class—without their prior express written or oral consent.

47. Further, Defendant made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*. Defendant utilized equipment that made the telephone calls to Plaintiff and other members of the Class simultaneously and without human intervention.

48. By making unsolicited telephone calls to Plaintiff and members of the Class's cellular telephones without prior express consent, and by utilizing an ATDS, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

49. As a result of Defendant's unlawful conduct, Plaintiff and the members of the Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular telephones and, under Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

50. Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class.

### SECOND CAUSE OF ACTION
### Violation of 47 U.S.C. § 227 *et seq.*
### (On behalf of Plaintiff and Autodialed Requested Stop Class)

51. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

52. Defendant made unsolicited and wanted telemarketing calls to telephone numbers belonging to Plaintiff and the other members of the Autodialed Requested Stop Class on their cellular telephone *after* the person had informed Defendant that s/he no longer wished to receive such calls from Defendant.

53. Every member of the Autodialed Requested Stop Class asked Defendant to stop calling him or her to no avail. Despite such requests, Defendant continued to place autodialed calls to their cellphones.

54. Defendant made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*.

55. By making unsolicited telephone calls to Plaintiff and members of the Autodialed Requested Stop Class's cellular telephones after they requested to no longer receive calls, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) by continuing to call them without prior express consent.

56. As a result of Defendant's unlawful conduct, Plaintiff and the members of the Autodialed Requested Stop Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular telephones and, under Section 227(b)(3)(B), are each entitled to, inter alia, a minimum of $500 in damages for each such violation of the TCPA.

57. Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Autodialed Requested Stop Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Richard Wilber, individually and on behalf of the Classes, prays for the following relief:

1. An order certifying the Classes as defined above, appointing Plaintiff Richard Wilber as the representative of the Classes and appointing his counsel as Class Counsel;

2. A declaratory judgment declaring that Defendant's calls violated the TCPA, that Defendant's equipment constitutes an automatic telephone dialing system under the TCPA, that Defendant failed to obtain prior express consent to call Plaintiff and the other members of the Autodialed No Consent Class, and that Defendant failed to honor stop-call requests to Plaintiff and the members of the Requested Stop Class;

3. An award of actual and statutory damages, to be trebled in the event the Court finds that Defendant has acted knowingly and willfully, with all monies awarded to be placed into a common fund for the benefit of the Class Members;

4. An injunction requiring Defendant and its agents to cease all unsolicited telephone calling activities and to honor do not call requests;

5. An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining, and maintaining records of, the call recipient's prior express consent to receive calls made with such equipment;

6. An order requiring Defendant to disgorge any ill-gotten profits as a result of its unlawful telephone calling practices;

7. An award of reasonable attorneys' fees and costs to be paid from the common fund;

8. An award to cy pres, as necessary; and

9. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**RICHARD WILBER**, individually and on behalf of all others similarly situated,

Dated:  September 19, 2016         By:  ___*/s/ Steven J. German*___
                                             One of Plaintiff's Attorneys

Steven J. German - State Bar No. 014789
Scott B. Seymann – State Bar No. 027215
**ADELMAN GERMAN, P.L.C.**
8245 North 85th Way
Scottsdale, Arizona 85258
Telephone (480) 607-9166
Facsimile (480) 607-9031
steve@adelmangerman.com

Stefan Coleman*
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
201 S Biscayne Blvd, 28th Floor
Miami, Florida 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SSteven L. Woodrow*
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Attorneys for Plaintiff and the Classes

* *Pro Hac Vice* Admission to Be Sought